UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JULIA PREDMORE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>NICK'S MANAGEMENT, INC., NICK'S CLUBS, INC. f/k/a ADVENTURE PLUS ENTERPRISES, INC. d/b/a PT'S MEN'S CLUB, and NICK MEHMETI<br><br>*Defendants.* | Civil Action No. 3:20-CV-00513-X |

## MEMORANDUM OPINION AND ORDER

This case arises out of the alleged misclassification of exotic dancers as independent contractors. Plaintiff, Julia Predmore, claims that the defendants misclassified her as an independent contractor instead of an employee, resulting in violations of the Fair Labor Standards Act (the Act). The defendants moved to dismiss due to an arbitration agreement and/or stay the litigation and compel arbitration. [Doc. No. 17]. Predmore then moved to certify a collective action, [Doc. No. 22] and the defendants requested a stay of the motion to certify a collective action. [Doc. No. 24]. After careful consideration, and as explained below, the Court **DENIES** the motion to dismiss due to the arbitration clause but **GRANTS** the motion to compel arbitration and stay this litigation. Accordingly, the Court **DISMISSES AS MOOT** Predmore's motion to certify a collective action and

1

**DISMISSES AS MOOT** the defendants' motion to stay certification of a collective action. The Court administratively closes this case and will reopen it upon the filing of a motion regarding the arbitration award.

## I. Background

Predmore worked as an exotic dancer for PT's Men's Club (the Club) from May 2016 to August 2019. The Club required dancers to work at least four, eight-hour shifts per week, including an early weekday shift. Predmore claims that she and other dancers actually worked ten hours a day, six days a week, and sometimes as many as 17 hours per day. Dancers earned compensation only through tips, and the Club required that they pay fees for: failing to meet the shift minimum, missing a shift, being late, and missing a stage dance. The Club also charged dancers a "house fee" for every shift they worked, a service and supply fee, a fee for customers that paid for dances using credit cards, and mandatory tip-outs. She claims these fees amounted to hundreds of dollars per week.

Predmore sued the Club, Nick's Management, Inc. (Nick's Management) and Club owner Nick Mehmeti, claiming that they failed to pay overtime wages to her and other opt-in plaintiffs as the Act requires. She also alleges that the fees and mandatory tip-outs constituted unlawful kickbacks under the Act. The defendants claim that Predmore signed a valid Licensing Agreement that included: (1) a clause compelling arbitration of any "disputes arising under [the] Agreement as well as any

disputes that may have arisen at any time during the relationship between the parties," and (2) a class-action waiver.[1]

## II. Legal Standards

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction.[2] An arbitration clause implicates forum selection and claims-processing rules, but it does not deprive a court of subject matter jurisdiction.[3]

The Federal Arbitration Act (Arbitration Act) "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."[4] In the Arbitration Act, Congress explained that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[5] The inclusion of such strong language "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[6]

When considering a motion to compel arbitration, the Court conducts a two-step analysis. First, the Court determines "whether there is a contract between the

---

[1] Doc. No. 17, Attachment 1 at 13.

[2] FED. R. CIV. P. 12(b)(1).

[3] *See Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015).

[4] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

[5] 9 U.S.C. § 2.

[6] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

parties at all."⁷ This initial determination has two subparts: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."⁸ Second, the Court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"⁹ When the Court finds that a valid agreement to arbitrate exists, and there are no legal constraints precluding arbitration, then the Court must order the parties to arbitrate the dispute.¹⁰

But this analysis changes when the agreement at issue contains a delegation clause. "A delegation clause is 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'"¹¹ In the presence of a delegation clause, the question then becomes *who* has the power to decide whether the claim is arbitrable: the arbitrator or the Court.¹²

In the delegation-clause framework, the Court first decides whether the parties entered into an arbitration agreement.¹³ In doing so, the Court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence'

---

⁷ *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018).

⁸ *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam).

⁹ *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

¹⁰ *See Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).

¹¹ *Clark v. Nordstrom, Inc.*, 2019 WL 3428947, at *2 (N.D. Tex. July 30, 2019) (Fitzwater, J.) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

¹² *Id.*

¹³ *Id.* at *3.

4

challenges."[14] "[C]ourts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so."[15] This "clear-and-unmistakable" standard is a "'qualification' to the application of 'ordinary state-law principles that govern the formation of contracts.'"[16] That is to say that "to the extent [Fifth Circuit] precedent diverges from Texas law," the Court follows the Fifth Circuit's "interpretation of the 'clear-and-unmistakable' threshold."[17] And the Fifth Circuit has explained that "stipulating that the [American Arbitration Association] Rules will govern the arbitration dispute constitutes . . . 'clear and unmistakable' evidence.'"[18] "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue."[19]

While a party moving to compel arbitration bears the initial burden of establishing by a preponderance of the evidence that a valid arbitration provision

---

[14] *Arnold*, 890 F.3d at 550.

[15] *Id.* at 551.

[16] *Id.* at 552 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[17] *Id.*

[18] *Id.*

[19] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

exists,[20] a successful showing shifts the burden to the nonmovant to demonstrate the arbitration provision is invalid.[21]

### III. Analysis

#### A. Existence of Binding Arbitration Agreement

When a party seeks to compel arbitration based on a contract, the Court first asks "whether the parties entered into any agreement at all."[22] In doing so, it must distinguish between validity or enforceability challenges on the one hand and formation or existence challenges on the other hand.[23] Although the difference between the two types of challenges may be unclear, "the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent."[24]

The strong federal policy favoring arbitration does not influence this initial determination, and the Court focuses only on contract principles under Texas law to determine if a contract was formed.[25] According to Texas law, "binding and

---

[20] *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) ("[A] party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity" either based on unenforceability or scope).

[21] *Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012) (per curiam) (citing *Carter*, 362 F.3d at 297)).

[22] *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443–45 (N.D. Tex. 2019).

[23] *Arnold*, 890 F.3d at 550.

[24] *Id.* (quoting *Buckeye Check Cashing*, 546 U.S. at 444 n.1) (citation omitted).

[25] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

enforceable contracts are formed when an offer is made and accepted, when there is a meeting of the minds, and when the terms are sufficiently certain to define the parties' obligations."[26] The defendants bear the initial burden of proving by a preponderance of the evidence the existence of a valid agreement. The Court finds that they have.

Predmore signed the Licensing Agreement (the Agreement) on February 13, 2019. **(Doc. No. 29 at 9).** The Agreement contained the following language on the top of the first page: "**NOTICE: THIS IS A LEGAL CONTRACT THAT AFFECTS THE LEGAL RIGHTS OF THE PARTIES TO THIS CONTRART – READ IT!**"[27] By signing the Agreement, Predmore also acknowledged that she "ha[d] read and reviewed [the] Agreement including the attached terms and conditions in its entirety, [and] that [she] ha[d] been given an opportunity to ask [the Club] questions about it or express any concerns about [the Agreement], and that [she] [] had an opportunity to consult with an attorney."[28] That agreement also contained an arbitration clause. The language of the Agreement satisfies the defendants' initial burden.

The burden now shifts to Predmore to offer some evidence that the Agreement is invalid. But she offers none.[29] Predmore does not claim that she did not sign the

---

[26] *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 389 (Tex. App.—Austin, 2007, pet. granted), *aff'd in part, rev'd in part on other grounds*, 434 S.W.3d 142 (Tex. 2014).

[27] Doc. No. 17, Attachment 1 at 5.

[28] *Id.*

[29] If Predmore had carried her burden at this stage, federal procedure would kick in and require a jury trial on the existence of an arbitration agreement. *See Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363 (5th Cir. 2015) (under the Arbitration Act, "[a] district court must hold a trial on the existence of an arbitration agreement if a motion to compel arbitration is filed and 'the making of the

Agreement or that she lacked the mental capacity to consent; instead, she argues that the Agreement is substantively and procedurally unconscionable **(Doc. No. 18 at 1).** Because the defendants satisfied their initial burden, and Predmore failed to offer any evidence to rebut the existence of a valid agreement, the Court finds that the parties created a valid arbitration agreement under Texas law.

## B. Delegation Clause

Before the Court can consider Predmore's unconscionability challenges, it must determine whether the Agreement contains a delegation clause. As explained above, the Fifth Circuit recognizes both explicit and implicit delegation clauses. The key inquiry is whether clear and unmistakable evidence exists showing that the parties agreed to arbitrate threshold questions of arbitrability. Incorporation of the Arbitration Association Rules constitutes clear and unmistakable evidence of an implicit delegation clause in the Fifth Circuit.

Here, the Agreement states that "[t]o the fullest extent permitted by law, the arbitrator shall apply the commercial arbitration rules of the American Arbitration Association . . . ."[30] By mandating the application of the Arbitration Association Rules, the Agreement incorporates the Arbitration Association Rules.[31] The Court finds that this language evinces a clear and unmistakable intent to arbitrate

---

arbitration agreement . . . [is] in issue" (quoting 9 U.S.C. § 4) (alterations in original)). In other words, there would be a jury trial on whether or not to have a jury trial.

[30] Doc. No. 17, Attachment 1 at 13.

[31] The American Arbitration Association Commercial Rules provide for the determination of threshold questions. *See Commercial Arbitration Rules and Mediation Procedures* (amended May 1, 2018), AMERICAN ARBITRATION ASSOCIATION at 32, P-2(a)(vi)(a–d) (explaining that arbitrators should resolve threshold issues, including "whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable").

threshold questions of arbitrability because the Fifth Circuit has explained that "stipulating that the [Arbitration Association] Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence."[32] The Agreement therefore contains a delegation clause.

When a contract contains a delegation clause, the Court's analysis is limited to specific challenges to the delegation clause.[33] If a party challenges the contract as a whole, the Court must leave that determination to the arbitrator.[34] So, this Court's analysis of Predmore's unconscionability arguments hinges on whether they are challenges to the contract *in its entirety* or to the delegation clause *specifically*.

## C. Procedural Unconscionability

The Supreme Court has explained that "in an employment contract many elements of alleged unconscionability applicable to the entire contract . . . would not affect the agreement to arbitrate alone."[35] Here, Predmore argues that the arbitration agreement is procedurally unconscionable because: (1) the Club required dancers to sign it as a condition of employment; (2) they did not have adequate time to review it; (3) the Club did not present them with an explanation of the terms; (4) they are not highly educated; and (5) the opt-in plaintiff does not speak English as a first language.[36]

---

[32] *Arnold*, 890 F.3d at 552.

[33] *Rent-A-Ctr.*, 561 U.S. at 72 (explaining that "unless [the plaintiff] challenged the delegation provision specifically," the Court must treat it as valid and leave "any challenge to the validity of the Agreement as a whole for the arbitrator").

[34] *Id.*

[35] *Id.* at 71.

[36] Doc. No. 18 at 14.

The Court finds that none of these bases of alleged procedural unconscionability challenge the delegation clause specifically. The conditions under which Predmore and the opt-in plaintiff signed the Agreement are not isolated to the delegation clause; they are inherently related to the contract in its entirety. For example, the fact that the Club required dancers to sign the Agreement as a condition of employment is not tied only to the delegation clause; dancers were required to sign the contract in its entirety. Because Predmore's procedural-unconscionability arguments attack the Agreement as a whole, it is for the arbitrator—not the Court— to resolve whether the Agreement is procedurally unconscionable.

### D. Substantive Unconscionability

Importantly, Predmore explained that she "is not contesting any of the terms of her agreement—she is instead contending that the [Agreement] is a sham and that she, along with other exotic dancers, was in fact an employee[.]"[37] Viewed against this backdrop, Predmore's substantive-unconsciousness claims target the contract as a whole and not the delegation clause specifically.

Predmore appears to argue that the Agreement is substantively unconscionable for two separate, but interrelated, reasons: (1) the cost-splitting provision would "force dancers to pay hefty costs just to *commence* an arbitration proceeding;"[38] and (2) the cost-splitting provision conflicts with her statutory rights under the Act. Although Predmore mentions the delegation provision in passing, her

---

[37] Doc. No. 18 at 8.
[38] *Id.* at 16.

10

argument is not in reality tailored to the delegation provision.[39]  Much like the plaintiff in *Rent-A-Center*, Predmore's "substantive unconscionability arguments assail[] arbitration procedures called for by the contract," like the cost-splitting provision, "that were to be used during arbitration under both the agreement to arbitrate employment-related disputes *and* the delegation provision."[40]  Had Predmore challenged "the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable," the Court would be bound to consider the challenge.[41]

But Predmore did not do that.  Indeed, she made clear that she was challenging the Agreement as a whole, not the delegation provision.  Therefore, the arbitrator must assess her substantive-unconscionability challenges.

---

[39] *See id.* ("The risk and uncertainty regarding who should pay costs is chilling and renders the delegation clause substantively unconscionable."). The delegation clause at issue here calls for application of the American Arbitration Association's Commercial Rules.  Those rules actually *help* Predmore with her costs.  The rules provide that the American Arbitration Association will apply the Employment Fee Schedule, which provides that "all expenses of the arbitrator, required travel and other expenses, and any [Association] expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne by the *employer* or company, unless otherwise agreed by the parties *post-dispute*." *See Commercial Arbitration Rules and Mediation Procedures* (amended May 1, 2018), AMERICAN ARBITRATION ASSOCIATION, at 10 n*., https://www.adr.org/sites/default/files/CommercialRules_Web.pdf) (last visited on Jan. 25, 2021) (emphasis added); Employment/Workplace Fee Schedule (amended Nov. 1, 2019), AMERICAN ARBITRATION ASSOCIATION, at 2, https://www.adr.org/sites/default/files/Employment_Fee_Schedule.pdf) (last visited on Jan. 25, 2021). They also limit an individual's filing fee to $300. *See id.*  So, Predmore's argument actually targets the agreement as a whole.  This is so because challenging the delegation clause specifically would have the opposite outcome: allegedly requiring her to pay more costs.

[40] *Rent-A-Ctr.*, 561 U.S. at 74.

[41] *Id.*  Even if the Court were to examine the unconscionability claims, it would reject them under Texas law because there must be both procedural and substantive unconscionability to set aside an arbitration agreement.  *See Escalera v. J.D. Byrider DFW-Texas, Inc.*, 2014 WL 12588317, at *1 (N.D. Tex. June 16, 2014) ("Under Texas law, both procedural and substantive unconscionability must be present to invalidate an arbitration agreement.").

11

### E. Scope

The plaintiffs argue that their misclassification claim is outside the scope of the Agreement because it accrued prior to the parties signing the Agreement. But that determination is not for the Court. "Because the Agreement contains a valid delegation clause, all disputes regarding . . . the *scope* of the Agreement must be decided by the arbitrator, not the courts."[42]

### F. Non-Signatories

Finally, the Court addresses whether Mehmeti and Nick's Management, as non-signatories, may compel arbitration. The parties do not dispute that the Club is a signatory to the Agreement; as such, it may enforce the Agreement. But the parties do dispute whether non-signatories Nick's Management and Mehmeti can enforce the Agreement.

The defendants argue that because Mehmeti and Nick's Management are agents of the Club, they did not need to sign the Agreement. They also argue that they did not need to sign because equitable estoppel and/or the intertwined-claim theory applies. But whether Mehmeti and Nick's Management can compel arbitration pursuant to these legal theories is a question for the arbitrator. That is so because the scope of who is covered by the term "parties," as used in the Agreement is a question of contract interpretation, not contract formation.[43]

---

[42] *Clark*, 2019 WL 3428947, at *4 (Fitzwater, J.) (emphasis added).

[43] *See Id.*

### E. Dismiss v. Stay

The defendants urge the Court to either dismiss the action upon compelling arbitration or to stay the action and compel arbitration. Predmore argues that a stay is the appropriate remedy. The Court agrees with Predmore. The Fifth Circuit has explained that "if a dispute is subject to mandatory . . . arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration."[44]

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the defendants' motion to dismiss but **GRANTS** their motion to stay and compel arbitration. The Court **DISMISSES AS MOOT** Predmore's motion to certify a collective action and **DISMISSES AS MOOT** the defendants' motion to stay the certification of a collective.

**IT IS SO ORDERED** this 4th day of February 2021.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[44] *Ruiz*, 784 F.3d at 249.